IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GUADALUPE MASSOTH, as Personal
Representative of the Estate of Gerald Massoth, Jr.,
Deceased, and as Parent and Next Friend of their
Minor Children Crystal Massoth, Gerald Massoth III,
and Coral Massoth

       Plaintiff,

  vs.                                                                              No. CIV 98-0360 JC/DJS

CITY OF ALBUQUERQUE, NEW MEXICO,
BOARD OF COUNTY COMMISSIONERS OF
BERNALILLO COUNTY, and FORMER
BERNALILLO COUNTY DETENTION CENTER
DIRECTOR MICHAEL SISNEROS,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER came on for consideration of Defendants' Motion to Dismiss Plaintiff's Claims for Loss of Consortium *(Doc. 48)*, filed April 8, 1999; Defendant Michael Sisneros' Motion for Partial Summary Judgment *(Doc. 53)*, filed April 9, 1999; Defendants' Motion for Partial Summary Judgment on Plaintiff's Civil Rights Claims *(Doc. 58)*, filed April 12, 1999; and Defendants' Motion in Limine to Exclude the Testimony of William E. Foote, Ph. D. *(Doc. 65)*, filed April 26, 1999. The Court has reviewed the motion, the memoranda submitted by the parties and the relevant authorities. The Court finds that Defendants' Motion to Dismiss Plaintiff's Claims for Loss of Consortium is well taken in part and will be granted in part. The Court finds that the two motions for partial summary judgment on the civil rights claims are well taken and will be granted. The Court

further finds that Defendants' Motion in Limine is not well taken and will be denied without prejudice for Defendants to renew the motion at a later time.

**I.     Factual Background**

Gerald Massoth, Jr. ("Massoth") was found dead in his cell at Bernalillo County Detention Center ("BCDC") on the morning of March 27, 1996. Massoth had been detained in BCDC since April 29, 1995 awaiting trial on a murder charge. Plaintiff presents substantial evidence that Massoth committed suicide by ingesting an overdose of the psychiatric medications that he had been receiving while incarcerated at BCDC. Apparently, he had been hoarding the medications for several weeks or months. Plaintiff does not present any evidence that any of the defendants or their employees were aware that Massoth was hoarding his medications.

Defendants present evidence that Massoth received psychiatric care throughout the eleven-month period of his incarceration. Massoth was housed in the psychiatric unit for two periods of over one month each in the spring and summer of 1995. Defendants document numerous visits to Massoth by mental health counselors, nurses, psychologists and psychiatrists. Plaintiff does not dispute that these visits actually occurred, but instead presents evidence of overcrowding at BCDC and evidence that the available psychiatric care was spread too thin for the burgeoning jail population.

**II.    Analysis**

    **A.     Motions for Summary Judgment on Plaintiff's
    Civil Rights Claims**

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). I must "view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence" that would justify sending the case to a jury. *See Williams v. Rice*, 983 F.2d 177, 179 (10th Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52 (1986)).

Plaintiff alleges that the decedent, a pretrial detainee, was deprived of his civil rights under the Eighth and Fourteenth Amendments to the Constitution. The parties agree that pretrial detainees have substantive due process rights under the Fourteenth Amendment that are equivalent to the Eighth Amendment rights of prisoners to be free from cruel and unusual punishment. *See Barrie v. Grand County, Utah*, 119 F.3d 862, 867 (10th Cir. 1997); *Hutto v. Davis*, 972 F. Supp. 1372, 1375 (W.D. Okla. 1997). Deliberate indifference on the part of prison officials to the serious medical needs of inmates constitutes cruel and unusual punishment of prisoners. *See Estelle v. Gamble*, 429 U.S. 97, 102 (1976). The Eighth Amendment also protects against deliberate indifference to an inmate's serious mental health needs. *See Torraco v. Maloney*, 923 F.2d 231, 233 (1st Cir. 1991). A pre-trial detainee must also establish deliberate indifference of his custodian to a substantial risk of serious harm in order to state a claim for failing to provide adequate medical attention. *See Barrie*, 119 F.3d at 868-69.

The dispositive issue in deciding Defendants' motions for summary judgment on the civil rights claims is whether Plaintiff has come forward with sufficient evidence to establish a genuine question of fact on whether Defendants were deliberately indifferent to Massoth's risk of suicide. I conclude that Plaintiff has not met her burden on this issue. Plaintiff presents a two-pronged

argument: that Defendants were aware that Massoth was at risk of committing suicide, and that Defendants deliberately overcrowded BCDC.

I reject Plaintiff's arguments on both fronts. First, even if Defendants were aware that Massoth was at risk of committing suicide, Plaintiff fails to rebut the fact that Defendants took considerable measures to prevent his suicide. Massoth was placed in the psychiatric unit on two occasions for observation and treatment. Massoth was seen by mental health professionals on dozens of occasions during the course of his detention. Massoth received psychiatric medication. The fact that Defendants' efforts were unsuccessful in preventing Massoth's suicide does not establish deliberate indifference. *See Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998). At best, Plaintiff's evidence would establish that Defendants were negligent in responding to the risk of suicide. But negligence alone is not a sufficiently culpable state of mind to constitute a civil rights violation. *See id.*

The second prong of Plaintiff's argument also fails. Even if Defendants were aware of prison overcrowding and its risks, Plaintiff does not present any evidence that the overcrowding caused Massoth to receive inadequate medical attention. As noted, there is evidence that Massoth received considerable attention from mental health professionals. Therefore, even if there was dangerous overcrowding at BCDC, and even if BCDC should have hired more mental health professionals to compensate, Plaintiff presents no evidence that Massoth's medical needs were not met because of the overcrowding.

I note that Plaintiff has not presented any evidence that any BCDC employee was aware that Massoth was "palming," "cheeking," or otherwise hoarding medicine. Without some showing that BCDC employees were aware that Massoth was hoarding his drugs, I cannot conclude that the

manner in which BCDC dispensed his medications displayed deliberate indifference to the risk of suicide. Again, Plaintiff presents evidence on this point that can establish negligence, at best.

Because Plaintiff has not presented evidence that would establish deliberate indifference to decedent's serious medical needs, I must dismiss the civil rights claims in Counts I and II.[1] As there are no federal claims remaining, I must consider whether I should decline to exercise supplemental jurisdiction over the remaining state claims. *See* 28 U.S.C. § 1367© (3). I conclude that I should exercise supplemental jurisdiction over the state claims in the interest of judicial economy because this case is set for trial in less than two months, all discovery has been completed, and the deadline for filing dispositive motions has passed.

**B.    Motion to Dismiss Loss of Consortium Claims**

The New Mexico Tort Claims Act declares that governmental entities and their employees acting within the scope of their duties shall be immune from tort liability, unless the immunity has been specifically waived by one of the exceptions in the Act. *See* N.M. STAT. ANN. § 41-4-4. Defendants correctly note that loss of consortium is not one of the enumerated torts for which the state has waived immunity. However, wrongful death is included in some of the statutory waivers that might apply to this case.

The New Mexico Wrongful Death Act is a "survival" statute that permits losses to the decedent to be recovered by the decedent's estate. For example, lost wages from future employment are appropriately claimed under such a statute. The New Mexico Supreme Court broadened the types of damages that can be recovered under the Wrongful Death Act in *Romero v. Byers*,

---

[1] Count II alleges municipal liability for failure to train and/or supervise due to municipal policy or custom. The same deliberate indifference standard applies to that count as to the first count. *See Liebe*, 157 F.3d at 579.

117 N.M. 422, 872 P.2d 840 (1994). The *Romero* decision permits a jury to award "fair and just compensation for the reasonably expected nonpecuniary rewards the *deceased* would have reaped from life" in actions brought under the Wrongful Death Act. *Id.* at 428, 872 P.2d at 846 (emphasis added). However, loss of consortium damages accrue to the survivors, not the estate of the decedent. Therefore, they would not be appropriate under the Wrongful Death Act. *See id.* at 429, 872 P.2d at 847 (holding that damages for loss of spousal consortium are not recoverable in a wrongful death action, but may be recovered in a separate loss of consortium action).

Contrary to Plaintiff's assertions, New Mexico clearly recognizes a loss of consortium cause of action separate from (but dependent on) the wrongful death claim. *See id.* The cases cited by Plaintiff for the proposition that loss of consortium actions are not independent torts do not support Plaintiff's argument. These cases merely indicate that the loss of consortium cause of action is dependent on the outcome of the underlying claim--that is, a loss of consortium claim must fail if the wrongful death or other tort claim fails.

I realize that the distinction that Justice Franchini makes in the *Romero* opinion between loss of consortium and damages for the value of guidance and counseling is an exceedingly fine one. Nonetheless, there are important differences. Loss of consortium is valued from the standpoint of the children, i.e., how much they have been harmed. The value of guidance and counseling is based on the objective worth of the life of the decedent in terms of the services that he could be expected to perform. Furthermore, the wrongful death action must be brought on behalf of decedent's estate, not in the names of the children.

In the present case, I conclude that Guadalupe Massoth, as personal representative of the estate, may seek damages for the loss of the value of Gerald Massoth, Jr.'s life, including the value

of the guidance and counseling that he reasonably could be expected to provide to his children.[2] These damages are to be valued from the decedent's standpoint, as part of the productive value of his life. Guadalupe Massoth may not recover damages on behalf of her minor children for loss of consortium, because Plaintiff does not identify any waiver of sovereign immunity under the Tort Claims Act that would apply to that cause of action. *See Kampa v. City of Albuquerque*, No. CIV 96-1572 LFG/DJS, slip op. at 3 (D.N.M. Feb. 20, 1997).

### C. Motion in Limine

Defendants' motion in limine seeks to exclude the testimony of Plaintiff's forensic psychologist, William E. Foote, on the grounds that Foote's testimony does not satisfy the standards of reliability for scientific testimony set forth in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Defendants' motion appears to challenge the weight that the trier of fact should place on Dr. Foote's testimony, not its admissibility. For example, Defendants argue that Foote is a "professional witness," that he does not have active patients, and that he does not have much experience counseling individuals in prison or jail settings. This does not address the issue of whether Foote's reasoning and methodology is scientifically valid and can be applied to the facts of the case. Therefore, Defendants have not met their burden of raising a proper *Daubert* challenge.

This opinion does not address the issue of whether Dr. Foote may testify as an expert. Plaintiff must still establish a proper foundation for Dr. Foote to be qualified as an expert at trial. Defendants may renew their objection to Dr. Foote's testimony at trial.

---

[2] Of course, Defendants may introduce evidence calling into doubt the alleged value of this guidance and counseling, given that the decedent was facing a sixteen-year sentence for second-degree murder.

### III. Conclusion

Wherefore,

**IT IS ORDERED** that Defendant Michael Sisneros' Motion for Partial Summary Judgment *(Doc. 53)*, filed April 9, 1999, and Defendants' Motion for Partial Summary Judgment on Plaintiff's Civil Rights Claims *(Doc. 58)*, filed April 12, 1999 are **granted**. Summary judgment is granted in favor of all defendants, and against Plaintiff, as to Counts I and II of Plaintiff's Second Amended Complaint.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Plaintiff's Claims for Loss of Consortium *(Doc. 48)*, filed April 8, 1999, is **granted in part**. All claims for loss of consortium brought by Plaintiff on behalf of her minor children are dismissed, and the minor children are dismissed from this suit. Plaintiff may seek damages for loss of guidance and counseling on behalf of the estate of the deceased.

**IT IS FINALLY ORDERED** that Defendants' Motion in Limine to Exclude the Testimony of William E. Foote, Ph. D. *(Doc. 65)*, filed April 26, 1999, is **denied**.

DATED this 3rd day of May, 1999.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Counsel for Plaintiff : | Kathryn A. Hammel<br>Cates & Hammel, P.C.<br>Los Lunas, New Mexico |
| Counsel for Defendants: | Jeffrey L. Baker<br>The Baker Law Firm<br>Albuquerque, New Mexico |